## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**TEENA SERENE GONZALEZ,**
                        **Plaintiff,**

**-vs-**                                                    **Case No.  6:14-cv-911-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**
                        **Defendant.**
_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits and a period of disability under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## I.      BACKGROUND

### A.      Procedural History

Plaintiff filed for a period of disability and disability insurance benefits on February 15, 2011, alleging an onset of disability on December 12, 2009, due to manic depression, back and neck injuries, low blood sugar, and trouble focusing or concentrating. R. 71, 81. Her application was denied initially and upon reconsideration.  R. 70-107.  Plaintiff requested a hearing, which was held on September 4, 2012, before Administrative Law Judge Michael Calabro  (hereinafter referred to as "ALJ").  R.

36-69.  In a decision dated October 9, 2012, the ALJ found Plaintiff not disabled as defined under the Act from December 12, 2009, the alleged onset date, through June 30, 2012, the date last insured.  R. 26.  Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on April 9, 2014. R. 16, 11-12.  Plaintiff filed this action for judicial review on June 13, 2014. Doc. 1.

**B.      Medical History and Findings Summary**

Plaintiff was born on March 18, 1981; she was 29 years old at the time she applied for benefits and 31 years old at the time of hearing. R. 40, 173. She reached the 11th grade in 1998 but has no education beyond that. R. 199. During the relevant period (15 years before her alleged onset date), she worked as a landscaper, office clerk and general office worker.  R. 25, 43-47.

Plaintiff's medical history is set forth in detail in the ALJ's decision.  Plaintiff complained of severe migraines, temporomandibular joint disorder (TMJ), pain in her skull, two bulging discs in her back, herniated discs in her neck, lower back pain shooting down her legs, broken tail bone, PTSD, anxiety attacks seizures, and manic depressive disorder. R. 216, 219, 231.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff had the severe medically determinable impairments of post-traumatic stress disorder (PTSD), anxiety, and degenerative disc disease, but these impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 18-21.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, except with no climbing of ropes, ladders, or scaffolds; avoiding concentrated exposure to vibration; limited to simple, repetitive tasks; and limited to occasional interaction with co-workers and the general public. R. 22.  Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work.  R. 25. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and,

based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as charge account worker and document preparer.  R. 26.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time from December 12, 2009, the alleged onset date, through June 30, 2012, the date last insured.  R. 26.

Plaintiff now asserts four points of error.  First, she argues that the ALJ erred by failing to grant adequate weight to the opinion evidence of Plaintiff's treating mental health specialists.  Second, she claims the ALJ erred by failing to find Plaintiff's bipolar disorder, depression, ADHD, sleep disorder, headaches, asthma, and shoulder injuries were "severe" and caused a more limited RFC or impacted her ability to work.  Third, Plaintiff contends the ALJ erred by failing to find that her mental RFC was more restricted based on the "paragraph B" criteria.  Fourth, she asserts that the ALJ erred by improperly applying the correct standard for pain and subjective symptoms.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.    Evaluation of Plaintiff's impairments

Plaintiff contends that the ALJ erred in his evaluation and findings concerning her impairments, particularly her mental impairments, and in his RFC evaluation by finding incomplete

mental limitations.[1]  Plaintiff argues that ALJ erred in his Step 2 analysis by not finding several of her

conditions–bipolar disorder, depression, ADHD, sleep disorder, headaches, asthma, and shoulder

injuries–to be "severe" impairments because the medical evidence reflected these conditions, which

caused a more limited residual functional capacity than the ALJ assigned, and should have resulted

in a finding that she was not able to perform any jobs at Steps 4 and 5.  In the alternative, Plaintiff

argues, even if not "severe", the ALJ failed to consider the effect of these additional impairments in

combination on Plaintiff's ability to work.  Plaintiff further argues that the ALJ erred in assessing her

mental residual functional capacity and her functioning in the "paragraph B" criteria for Listings

12.04 (Affective Disorders) and 12.06 (Anxiety Disorders)[2].  *See* R. 21.

Plaintiff contends that in addition to the ALJ's Step 2 error, he erred in his Step 3 findings

concerning the degree of severity of Plaintiff's mental functional restrictions as part of the "paragraph

B" criteria. Plaintiff argues that the ALJ's finding that she should be limited to simple, repetitive tasks

and to occasional interaction with co-workers and the general public did not recognize the true extent

of her mental limitations because substantial evidence supported greater limitations and the ALJ

mischaracterized certain parts of the record and testimony and ignored other parts.

The Commissioner argues the ALJ did not err at Step 2 of the sequential evaluation because

he found severe impairments and moved on to the other steps in the sequential evaluation, and the

ALJ then properly considered Plaintiff's non-severe impairments at later steps in the sequential

evaluation process, including at Step 3.  The Commissioner contends that Plaintiff fails to show she

had marked difficulties in any of the Paragraph B functional domains or repeated episodes of

---

[1]Plaintiff's arguments are for the most part focused on her mental limitations rather than any physical limitations from a shoulder injury or asthma.  Doc. 21.  As such, the Court's analysis will primarily focus on Plaintiff's mental impairments.

[2]The ALJ's decision contains a typographical error in that he miscited "Listing 12.09," which applies to "Substance Addiction Disorder" (that he did not discuss), when he intended to cite Listing **12.06** (Anxiety Related Disorders); under the pertinent Regulations, "anxiety disorders" include "post traumatic stress disorder"– which the ALJ found Plaintiff had at a "severe" level. 20 C.F.R.  Part 404, Subpart P, Appx. 1, 12.00, Mental Disorders.  Plaintiff does not dispute the applicability of Listing 12.06 (Anxiety Related Disorders).

decompensation each for extended duration, which are required to meet the Listing level for the two mental disorders the ALJ assessed.  Doc. 23.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe.  By definition, this inquiry is a "threshold" inquiry.  It allows only claims based on the most trivial impairments to be rejected.  In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); SSR 96-3p ("an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities").

When evaluating a mental impairment at step two, the Commissioner is required to apply the "special technique" described in 20 C.F.R. § 416.920a. This technique requires the adjudicator to determine first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 416.920a(b)(1). If the claimant is found to have such an impairment, the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," 20 C.F.R. § 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are found, then the adjudicator "generally" will conclude that the claimant's mental impairment is not "severe." 20 C.F.R. § 416.920a(d)(1). As in Plaintiff's case, if the mental impairments are found to be severe, the ALJ should then assess at Step 3 whether they meet or are equivalent in severity to the Listings for mental impairments. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d); *Doughty v. Commissioner of Soc.*

*Sec.*, 245 F.3d 1278.  To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement; to "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings.  *Wilson*, 284 F.3d at 1224 (citations omitted); *see* 20 C.F.R. §§ 404.1525, 404.1526.

Plaintiff's impairments would meet the required level of severity for either of the Listings considered by the ALJ if, in addition to satisfying the requirements of Paragraph A (which the Commissioner concedes), she also satisfied the requirements in Paragraph B.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06.  For Paragraph B, a claimant must show two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation each of extended duration. See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04B, 12.06B.  Episodes of decompensation are exacerbations or temporary increases in symptoms accompanied by a loss in adaptive functioning, as manifested by difficulties in daily activities, social functioning, or concentration, persistence or pace. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(4). Episodes of decompensation may be inferred by medical records showing significant alteration in medication or documentation of the need for a more structured psychological support system (*e.g.,* hospitalizations or placement in a halfway house or a highly structured household). *Id.*  If the mental impairments neither meet nor are equivalent in severity to any listing, the ALJ will then assess the claimant's residual functional capacity.  20 C.F.R. § 416.920a(d)(3).

In this case, the ALJ found Plaintiff's PTSD and anxiety to be severe impairments at Step 2 and, as part of the required evaluation at Step 3, the ALJ made further findings, including a finding that Plaintiff had mild difficulties and restrictions in activities of daily living and social functioning, and moderate difficulties in concentration, persistence or pace, with one to two episodes of

-7-

decompensation, but not extended duration. R. 21.  Because the ALJ found that Plaintiff's limitations did not meet the Paragraph B criteria[3] and consequently did not meet Listing 12.04 or 12.06, he continued the Sequential Evaluation Process and, in determining Plaintiff's RFC, explicitly included a finding that Plaintiff was mentally capable of "simple, repetitive tasks and limited to occasional interaction with co-workers and the general public." R. 22.  Plaintiff contends that the ALJ erred in not finding greater limitations in Plaintiff's activities of daily living and social functioning.

In this case, at Step 2 of the Sequential Evaluation Process, the ALJ found that Plaintiff had the severe impairments of post-traumatic stress disorder (PTSD), anxiety, and degenerative disc disease. R. 18.   The ALJ found that Plaintiff had mild restrictions in activities of daily living; he noted she "lives alone and there is no indication in the record that [she] has any limitation in performing her activities of daily living." R. 21.  The ALJ also found that Plaintiff had mild to moderate difficulties in social functioning, stating that "the treatment record does not indicate any difficulty with social interaction and the record shows that she is socially active." R. 21.  The ALJ also found that Plaintiff had moderate difficulties with regard to concentration, persistence or pace. R. 21.

Plaintiff argues that the ALJ's most serious error is his omission at Step 2 of her bipolar disorder diagnosis and symptomatic impairment, which she argues is distinct from either PTSD or anxiety, with its own pathology limitations in Plaintiff's residual functional capacity. She argues that Drs. Thebaud and Kootte both diagnosed her with bipolar disorder, as did most other providers in the

---

[3]The ALJ also found that Plaintiff's limitations did not meet the Paragraph C criteria:

[T]he evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence of an at least two year history of a chronic affective disorder that caused more than a minimal limitation of ability to perform basic work activity with one of the following: repeated episodes of decompensation, a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands/environmental changes that would cause decompensation, or a current history of one or more years of an inability to function outside a highly supportive living arrangement.

R. 22.  Plaintiff does not challenge the ALJ's determination as to the Paragraph C criteria.

record, including consultative examiner Dr. DeLuca, who administered several objective psychological tests and found a GAF of 35. R. 335-38.  Plaintiff also argues the ALJ erred in not adequately addressing Plaintiff's impairments of headaches, depression, ADHD, sleep disorder, headaches, asthma, and shoulder injuries; Plaintiff argues that substantial evidence supports a finding that these impairments have much more than a minimal effect on Plaintiff's ability to do basic work activities.  Alternatively, Plaintiff argues that, even if non-severe, the ALJ violated SSR 96-8p[4] by failing to consider the effect of the non-severe impairments along with the severe impairment on her ability to work.

Plaintiff also argues that the ALJ erred in finding she had mild difficulties in activities of daily living because she testified to many limitations in daily activities and social functioning, for example, using a rolling device to bring in groceries, not driving, and having church members come to her home so that she does not have to go out. R. 57-59.  She contends that the ALJ engaged in impermissible "sit-and-squirm" type jurisprudence[5] when he concluded that Plaintiff's "appearance, demeanor, and testimony did not support a finding for significant limitations in social functioning." R. 21.  The ALJ's characterization of Plaintiff's performance of basic activities of daily living, she argues, was flawed in minimizing the limitations imposed by severe impairments.  She argues it was error for the ALJ to rely on her limited attempts to perform some housework or have social contact, and to find mild restrictions where the record supported much more serious ones.  She argues substantial evidence supports different findings at each step of the sequential evaluation process, from

---

[4]"In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may– when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." SSR 96-8p.

[5]The Commissioner argues that ALJ was entitled to rely on Plaintiff's testimony and demeanor at the hearing in evaluating her credibility. *See* Social Security Ruling (SSR) 96-7p, SSR 96-7p, 1996 WL 374186 at * 8 (providing that in evaluating credibility, the adjudicator may consider personal observations in the overall evaluation, although personal observations cannot be the sole basis for an adverse credibility finding).

a finding that Plaintiff's depression and anxiety are severe impairments at Step 2, to more restricted functional areas at Step 3's "Paragraph B" criteria–findings which would have resulted in a significantly more limited mental residual functional capacity.

The Commissioner argues that the ALJ sufficiently identified substantial evidence supporting his conclusion that Plaintiff had mild difficulties with daily activities and social functioning, and moderate difficulties with maintaining concentration, persistence, or pace. R. 21. The Commissioner argues the ALJ's credibility finding took into account Plaintiff's testimony regarding all of her impairments. R. 23. The Commissioner points out that ALJ considered all of Plaintiff's impairments in his RFC analysis and, in summarizing Plaintiff's hearing testimony, noted Plaintiff alleged she had headaches, slept five hours a night, and identified medication she took for asthma, difficulty with sleep, and depression (R. 23, 48, 50, 60-61), which the ALJ found were not credible to the extent they were inconsistent with his RFC finding. R. 22 (noting he considered the "entire record" and "all symptoms"), R. 23 (found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with his RFC finding).

The Eleventh Circuit, in considering a similar appeal, held that the ALJ's finding of *any* severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy Step 2 because once the ALJ proceeds beyond Step 2, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe. *Burgin v. Commissioner of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished[6]) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also Phillips v. Commissioner*, 357 F.3d 1232, 1238 (11th Cir. 2004)). The ALJ must make specific and well-articulated findings as to the effect of the combination of all of the claimant's impairments. *Id* (citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)). However, a clear statement that the ALJ considered the combination of impairments

---

[6]Unpublished opinions of the Eleventh Circuit constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

constitutes an adequate expression of such findings.  *See Jones v. Dep't of Health & Human Servs.*, 94 1 F.2d 1529, 1533 (11th Cir. 1991).  Even assuming an ALJ errs in concluding that certain of a claimant's limitations are not severe impairments, the error will be harmless if the ALJ considered all of the claimant's impairments in combination at later steps in the evaluation process.  *Id.*  (finding substantial evidence supported the ALJ's finding that claimant's sleep apnea, obesity, and edema were not severe where the ALJ discussed in detail his medical records and testimony, which included all of his diagnosed ailments as well as his claimed limitations stemming from those ailments).  The Commissioner further points out that Plaintiff does not explain how any of the impairments the ALJ did not explicitly label as "severe" were actually more limiting than the ALJ's RFC finding, but are simply a diagnosis does not show the conditions are severe or imposed functional limitations.

Here, as the Commissioner points out, the ALJ found at Step 3 that Plaintiff did not have an impairment or "combination of impairments" that met or medically equaled a listing; he also explicitly considered Listing 12.04 for affective disorders such as depression *and* bipolar disorder[7], and Listing 12.06 for anxiety disorders at this Step.  R. 20-21, Finding No. 4.  *See Wilson v. Commissioner*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (holding that the ALJ's statement that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations no. 4" constituted evidence that the ALJ considered the combined effects of the claimant's impairments); *Jones v. Dep't of Health and Human Serv.*, 941 F.2d 1529, 1533 (11th Cir. 1991)(same).  Moreover, any errors the ALJ made in failing to include Plaintiff's diagnoses of bipolar disorder or depression, and headaches, or alleged sleep disorder were harmless because the ALJ considered all of her impairments in combination at later steps in the evaluation process after he

---

[7]To the extent Plaintiff argues that the ALJ erred in not finding her bipolar disorder was severe, there was no error because bipolar disorder falls within the Regulations' definition of affective disorder "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."  20 C.F.R. Part 404, Subpt. P, App. 1, Listing 12.04.

determined that she had a severe impairment due to her post-traumatic stress disorder, anxiety, and degenerative disc disease. R. 18. *See Burgin*, 420 Fed. Appx. at 904 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1991) (applying the harmless error doctrine to social security cases)).

The ALJ specifically found Plaintiff's alleged ADHD and alleged sleep disorder were not supported with sufficient clinical findings and do not have more than a minimal effect on the claimant's functioning, and her asthma was well-controlled with medication. R. 20. Plaintiff did not raise her "shoulder injury" specifically as a separate impairment; however, the ALJ considered the medical evidence of restrictions in her cervical spine and assessed the appropriate limitations in the RFC. R. 22. Moreover, an MRI of her shoulder from November 2010 found mild bursitis and no rotator cuff tear, and Plaintiff stated in responses to the SSA Supplemental Pain Questionnaire that pain was "not the reason" she was applying for benefits. R. 430. The ALJ's analysis of Plaintiff's impairments at Step 2 was based on substantial evidence.

The ALJ's assessment of Plaintiff's mental impairments, specifically the Paragraph B criteria findings of mild limitations in activities of daily living and social functioning and moderate limitations in concentration, persistence and pace, were also based on substantial evidence. The ALJ noted that Plaintiff lived alone and there was no indication in the record she had any limitation performing activities of daily living. R. 21, 41. Plaintiff testified that most of the time she was able to take care of her personal care needs, walk a dog, and could do chores around the house such as cooking and cleaning although people from her church sometimes helped. R. 57, 59. As to social functioning, the ALJ found Plaintiff's testimony did "not support a finding for significant limitations in social functioning. The treatment record does not indicate any difficulty with social interaction and the record shows that she is socially active. The undersigned has considered the claimant's GAF score range and finds that there is no objective evidence to support a finding of moderate restriction in social functioning." R. 21. Plaintiff testified she had a friend who would come over to her house for

-12-

religious study and she attended religious meetings two times per week. R. 59, 61.   Plaintiff also reported she got along with family, friends, neighbors, and authority figures. R. 224-25.  The ALJ also correctly determined that Plaintiff's medical records reported two episodes of decompensation, with one to two episodes of decompensation, but not of extended duration (R. 21) because the episodes happened several years apart, which was insufficient to meet the regulation's definition of repeated episodes of decompensation each for "extended duration." *See*  20 C.F.R. pt. 404, subpt. P, app. 1, §12.00C(4) ("The term repeated episodes of decompensation, each of extended duration . . . means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.") As the ALJ noted, Plaintiff had psychotic episodes in 2007, when she was receiving rehabilitation for drug addiction (benzodiazepine withdrawal) in jail (R. 21, 318, 324-33), and in January 2011 when she was admitted to a hospital for less than four days for suicidal ideation (R.  347-65). As the Commissioner points out, because the episodes were several years apart (not within one year) and neither lasted for at least two weeks, Plaintiff cannot show she met the regulatory definition of "repeated" episodes each of "extended duration" under the Regulations.

The ALJ's determination that Plaintiff's impairments did not meet or equal the Paragraph B criteria of Listings 12.04 and 12.06 is based on substantial evidence.

**B.     RFC and the treating physicians' opinions.**

Plaintiff claims that the ALJ should not have found her able to perform sedentary work in light of the opinions of Plaintiff's treating mental health specialists, Dr. Thebaud and Dr. Kootte, both of whom opined that Plaintiff completely disabled and incapable of performing work.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.*  Substantial weight must be given

to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

"Generally, treating physicians' opinions are given more weight than non-treating physicians; and the opinions of specialists are given more weight on issues within the area of expertise than those of nonspecialists." *Baker v. Astrue*, 2011 WL 899311, *7 (M.D. Fla. Mar. 14, 2011) (citing *McNamee v. Soc. Sec. Admin.*, 162 F. Appx. 919, 923 (11th Cir. Jan. 31, 2006) (unpublished); 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5) (the following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "Length of the treatment relationship and the frequency of examination"; (2) the "Nature and extent of treatment relationship"; (3) "Supportability"; (4) "Consistency" with other medical evidence in the record; and (5) "Specialization").

Plaintiff argues that the ALJ erred in giving little weight to the opinions of Dr. Thebaud and Dr. Kootte and in providing a brief rationale for the rejection.  The ALJ gave "little weight" to Dr. Thebaud's opinions in his Mental Impairment Questionnaire, dated September 12, 2011 (R. 423-27) which diagnosed Bipolar disorder and indicated Plaintiff's Global Assessment of Functioning (GAF) scores ranged between the 50 to 59 range in the past year. R. 423. He opined Plaintiff had serious limitations or was unable to do several mental work activities such as carry out simple instructions or get along with others; she had marked restriction of daily activities; marked difficulties in

maintaining social functioning; marked deficiencies in concentration, persistence or pace, and had four or more repeated episodes of decompensation within a twelve month period, each of two weeks duration.  R. 425-27.  The ALJ found his opinions were not "supported by the objective medical evidence of record and are given no weight. His evaluation of the B criteria are in conflict with the clinical evidence and the GAF evaluations in the record" and "there are only two (2) episodes of documented hospitalization due to decompensation, neither of which was of extended duration." R. 24.

The ALJ also gave little weight to the opinion of the treating psychotherapist, Anton Kootte, Ph.D., LCSW (R. 522-23, dated August 9, 2012), finding Dr. Kootte's "opinion is also not supported by the record as a whole. Claimant was able to perform substantial gainful work activities. Despite her traumatic experiences, claimant was able to function and work. The medical record consistently reports that the claimant's memory is intact, her attention and concentration are good, and there are few limitations in social functioning." R. 24.  Dr. Kootte opined Plaintiff had PTSD, depressive disorder, and a panic disorder, and Plaintiff's symptoms from her impairments were "disabling" and he believed her condition was "permanent" and "totally disabling." R. 522-23.  The ALJ found both of the opinions of Dr. Thebaud and Dr. Kootte to be "conclusory opinions that the claimant is disabled" and rejected them "insofar as they relate to the ultimate finding of disability." R. 24.

Plaintiff argues that the ALJ's rationale for rejecting each doctor's opinion is inadequate when applied to the applicable case law and rules, and when measured against substantial evidence in the record supporting the opinion that Plaintiff cannot engage in substantial gainful activity.  Plaintiff argues that both doctors are longtime treating mental health specialists who saw Plaintiff consistently and the opinions are internally consistent, consistent with each providers' own objective findings, and consistent with the record as a whole.  Plaintiff argues the medical records from all of her providers present a consistent picture of her suffering from the mental health impairments of PTSD, bipolar

disorder, anxiety, and depression such that the record as a whole both supports the opinions of Drs. Thebaud and Kootte, and supports a finding of a much more limited RFC.

According to the medical records, Plaintiff has a significant history of drug and alcohol abuse, leading to psychotic behavior (and arrest) and a psychiatric history of mood instability. R. 328-29. In December 2007, she was incarcerated with the Department of Corrections in the drug court program related to Xanax dependency and she had a history of narcotic drug abuse; her "bizarre behavior" was noted to be a result of benzodiazepine withdrawal. R. 312-13, 318, 370. By January 2008 the withdrawal process had run its course, but Plaintiff had deepening depression; she was diagnosed with probable substance-induced psychosis secondary to the withdrawal[8]. R. 326. Plaintiff had a subsequent hospitalization for suicidal ideation on New Years Day 2011 when she was admitted to South Seminole Hospital for depression and alcohol abuse after having been drunk for days; she had been on prescription anti-depressants but she had stopped taking them; she was cautioned about the drugs and alcohol use. R. 347-48, 356-58.

Following her hospitalization, Plaintiff began receiving treatment at Seminole Behavioral Healthcare, in February 2011. Dr. Ralph Ballentine saw Plaintiff at her first appointment on December 16, 2010, and noted Plaintiff's reports that she had "a long history of employment problems related to her mental health symptoms, and she had been unable to maintain stable employment throughout her adult life. Client has a history of opiate dependence, and had drug related charges in 2007, which also limits her employment opportunities." R. 373. She denied current drug or alcohol use following her treatments at The Bridge in 2007 and her diagnosis was Opioid Dependence Remission as of November 2010. R. 373. Plaintiff reported she was going to school for insurance licensing, but "is unable to continue due to her legal history." R. 374. On February 3,

_____

[8]Plaintiff stated in forms to the SSA that she was in jail and went to the doctor in the jail in 2009. R. 203. Those records from 2009 are not in the Record.

2011, Dr. Ballentine noted that Plaintiff was supposed to return to the clinic in a week, but it had been over a month; in the meantime she was hospitalized at South Seminole Hospital for approximately 4 days. R. 388. She was given medications, but she had not noticed any significant improvement. R. 388.

Plaintiff also apparently received treatment at the same time – in February 2011 – from a second psychiatrist, Dr. Adly Thebaud, who practices in Sanford, Florida at 1403 Medical Plaza Drive. R. 427. It does not appear from the medical records that he is associated with Seminole Behavioral Healthcare, where she was initially treated during this timeframe. R. 423-27. Plaintiff lists Dr. Josette Romain (since March 2011) as her "family psychiatrist/family doctor" at "The Medical Center" at the same address in Sanford, but Dr. Thebaud is not listed. R. 233-34. Dr. Thebaud diagnosed Plaintiff at her initial visit on February 28, 2011 with Bipolar Disorder by history and anxiety not otherwise specified, with "no medical problems"; he noted her conditions started about one to two years before. R. 462. Plaintiff was seen monthly from March to September 2011. R. 452-58. Dr. Thebaud noted Plaintiff "last worked in February 2011" but he noted "not able to work, c/o [complains of] cannot handle stress." R. 452.

On August 15, 2011, in a handwritten statement on a prescription pad, Dr. Thebaud wrote: "Patient is under our professional care. She is being treated for symptoms of bipolar disorder and adult ADHD. She will need at least a couple of years to fully recover her abilities to keep the symptoms under control." R. 446. Dr. Thebaud subsequently completed a Mental Impairment Questionnaire on September 12, 2011, stating his clinical findings that Plaintiff lacked concentration and could not handle stress, she was easily stressed out, and she lacked motivation; her prognosis was "guarded." R. 423, 427. Dr. Thebaud checked off ten boxes to identify Plaintiff's signs and symptoms: anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with weight change, decreased energy, blunt, flat or inappropriate affect, difficulty thinking or concentrating, mood

disturbance, persistent disturbances of mood or affect, emotional withdrawal or isolation, bipolar syndrome  with episodic periods of both manic and depressive nature, emotional lability, and manic syndrome. R. 424.  Dr. Thebaud opined that Plaintiff was unable to meet competitive standards for any category of unskilled work activity in virtually every category listed, with the notable exception of a limited but satisfactory ability to "ask simple questions or request assistance." R. 425.  Dr. Thebaud checked the boxes opining that Plaintiff had marked functional limitations activities of daily living, maintaining social functioning, concentration, persistence or pace, and he found four or more repeated episodes of decompensation within a 12 month period. R. 426.

It appears that Plaintiff subsequently began receiving treatment at The Grove Counseling Center in July or August 2011 with Dr. Glennon and Dr. Parr.  R. 272.  She subsequently switched psychiatrists to Dr. Chahal's office, where she received treatment from November 2011 to June 2012. R. 465-77, 489-92.

Plaintiff argues that the May 10, 2010 General Clinical Evaluation with Mental Status Examination performed by consultative examiner Joseph N. DeLuca, Ph.D. (R. 335-38) supports Drs. Thebaud's and Kootte's opinions; Dr. DeLuca administered several psychological tests including The Beck Depression Inventory - II, the Beck Anxiety Scale, the Beck Hopelessness Scale, the Mood Disorder Questionnaire, and the Life History Questionnaire, and diagnosed Plaintiff with bi-polar disorder with psychotic features (based on her history, clinical presentation, and psychological testing) and assessed Plaintiff with a GAF of 35.  R. 338.  Dr. DeLuca observed that "there was a disturbance in the content of thought as manifest by the admission of paranoid delusional thinking." R. 338.

The Commissioner argues that the ALJ properly gave little weight to Dr. Thebaud's opinions because they were not supported by the objective medical evidence of record.  R. 24.  In particular, the ALJ noted that Dr. Thebaud's opinion regarding Plaintiff's limitations and the "Paragraph B" criteria was in conflict with the clinical evidence that the ALJ cited reflecting that Plaintiff had no

more than mild difficulties in activities of daily living and social functioning and no more than

moderate difficulties with concentration, persistence, or pace. R. 21, 24, 426.  Further, to the extent

Dr. Thebaud noted Plaintiff had marked or serious limitations in mental activities and the broad

functional areas, the ALJ observed this was inconsistent with the GAF scores in the record (R. 24,

424-26) because Plaintiff generally had GAF scores in the 50 to 60 range, indicating most often no

more than moderate symptoms or moderate social or occupational limitations. R. 23, 358, 374, 380,

386, 392, 454-56, 458, 462, 467; DSM-IV at 34.

As the Commissioner points out, Plaintiff's more recent treatment progress notes dated after

Dr. Thebaud's September 2011 opinion from Dr. Chahal, showed improvement with consistent GAF

scores above 61, indicating no more than mild symptoms and Plaintiff's reports to the psychiatrist that

she was "doing well." R. 468-71, 489, 491.  Dr. Thebaud's opinion (R. 427) is clearly contrary to the

definition of decompensation as defined in the Social Security Regulations, in that the record reflected

at most two periods of decompensation, several years apart, and neither of which were of "extended"

duration, *i.e.*, lasting less than two weeks. R. 24, 318, 327-33, 347-65.  Moreover, as whole, Dr.

Thebaud's opinion on the Mental Questionnaire was conclusory in that it consisted mainly of

checking off boxes without identifying the objective mental health findings, such as the dates of

alleged lengthy decompensation, that supported his opinions.   The ALJ's discounting of Dr.

Thebaud's opinion was not in error.

The Commissioner argues, as with Dr. Thebaud's opinion, the ALJ appropriately gave little

weight to Dr. Kootte's opinion because it was conclusory and unsupported by the record, arguing that

the ALJ identified good reasons supported by the record and Dr. Kootte does not appear to be an

acceptable *medical* source whose opinion is to be given the weight of a treating physician. R. 24, 522-

23.  It appears that Dr. Kootte holds a Ph.D., however, he does not identify himself as a licensed

*psychologist*, but as a certified cognitive behavioral therapist, licenced clinical social worker, and

diplomate in psychotherapy. R. 522-23. *See* 20 C.F.R. § 404.1513(a) (listing acceptable medical sources to include physicians, psychologists, optometrists, podiatrists, and speech-language pathologists). Nonetheless, therapists are considered "other sources," and the ALJ may use evidence from such other sources about a claimant's impairment and how it affects her ability to work. *See* 20 C.F.R. § 404.1513(d)(1).

The Commissioner argues that the ALJ properly reasoned the opinion was not consistent with or supported by the record as a whole because, other than detailing her subjective complaints and her diagnoses, Dr. Kootte did not identify any objective mental examination findings that supported his disability opinion and it was contradicted by the medical record. R. 24, 522-23; Doc. 23 (citing *Crawford*, 363 F.3d at 1159-60 (upholding ALJ's determination to discredit a source's opinion because it was based primarily on subjective complaints unsupported by the medical evidence)). The Commissioner also argues that Plaintiff fails to identify objective evidence, rather than diagnoses alone, that support the limitations and disability conclusions reached by these sources, and the ALJ cited objective mental examination findings and GAF scores that conflicted with Drs. Thebaud and Kootte's opinions.

Here, the ALJ found in the medical record documented reports that Plaintiff's memory was intact, and her attention and concentration were good, with few social limitations, and her GAF score continued to increase in conjunction with Dr. Chahal's improved medication management. R. 24, 337-38, 454-58, 467 (GAF of 50 in November 2011), 468 (GAF of 62 in December 2011), 469 (GAF of 67 in January 2012), 471 (GAF of 64 in March 2012), 489 (GAF of 62 in May 2012), 491 (GAF of 68 in June 2012). Dr. DeLuca's consultative examination from May 2010 noted Plaintiff's cognitive functioning, her stream of thought, and her continuity of thought were adequate; she appeared to be of average intelligence with no gross neuropsychological deficits in the areas of memory or concentration, and impulse control and social judgment appeared to be within normal

limits. R. 338. Although the ALJ partially discounted Dr. DeLuca's conclusion Plaintiff had

impaired social functioning, impaired task persistence and concentration, and would likely deteriorate

in work-like settings based on Plaintiff's subjective reports and inconsistent with his benign

examination findings, the ALJ did credit Dr. DeLuca's findings of no deficits in memory or

concentration, and normal impulse control and social judgment on examination. R. 24, 337-38. The

ALJ appropriately evaluated Dr. Thebaud's and Dr. Kootte's opinions, along with Dr. DeLuca's

examination, and other psychiatric treatment records, and gave them the appropriate weight based on

the complete record of Plaintiff's mental health treatment.

### C.     Pain and credibility.

Plaintiff asserts that the ALJ erred by failing to properly apply the Eleventh Circuit's standard

for evaluating pain and other subjective symptoms of Plaintiff's impairments to find that she cannot

perform the demands of work amounting to substantial gainful activity at any exertional level. She

argues that substantial evidence in the record supports a finding that her combined pain, discomfort,

and impaired mobility and manipulative abilities, as well as mental impairments, would result in an

RFC that would preclude her performance of even unskilled sedentary work. The Commissioner

argues properly applied the eleventh circuit's pain standard and substantial evidence supports his

credibility finding.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent with the

objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the

pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  The ALJ in this case recited and applied the Eleventh Circuit's pain standard, as well as the governing standards for evaluating subjective complaints in the applicable regulations and Social Security Ruling ("SSR") 96-7p.  R. 22.

Plaintiff argues that she testified to experiencing chronic and severe pain in her neck, head, and shoulder and these complaints are consistent throughout, and supported by, the record.  Plaintiff contends that the ALJ cited disparate parts of the record to discredit Plaintiff and provided insufficient reasons for discrediting her subjective complaints, thus, failing to engage in the required analysis. She argues she has met her burden by showing evidence of an underlying medical condition – cervical disc problems and shoulder problems – and objective medical evidence confirming the severity of the alleged pain, as well as her testimony providing a full description of her pain and limitations.  In support, Plaintiff points to a cervical MRI on October 28, 2010 that found disc herniation with annular tear at C5-C6, narrowing of the left neuroforamen, annular bulge with annular tear at C4-C5, and muscle spasm (R. 428-429) and a shoulder MRI on November 12, 2010 which revealed fluid in the subacromial/subdeltoid bursa and mild bursitis (R. 430-431).

The ALJ found in this case that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.  R. 23.  Where an ALJ decides

not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ explained his credibility determination:

> The claimant testified that the past traumas leading to her PTSD and anxiety occurred long ago, primarily an incident at the age of eight. The injury that caused the degenerative disc disease occurred in 2004. However, the claimant was able to successfully work at the light and the sedentary exertional level until 2009. These conditions did not interfere with her ability to work and there is no evidence in the record that the claimant's impairments have been exacerbated or worsened since 2009. The objective evidence shows that the claimant has mild degenerative disc disease of the cervical spine. Examinations reveal full strength and a full range of motion. She has subjective tenderness on palpation and a positive straight leg-raising test, but no other indication of limiting physical impairment. In terms of the claimant's alleged mental limitations, the treatment notes consistently report that the claimant's memory and concentration are either intact or good. The claimant generally has a GAF score of 50-60, indicating moderate social or occupational limitations. The medical record does not support the claimant's testimony to the debilitating extent alleged.

R. 23. The ALJ specifically mentioned Plaintiff's October 2010 cervical spine MRI which revealed a mild annular bulge and a small disc herniation, and the normal results on the subsequent physical consultative evaluation in May 2011. R. 23. The ALJ also gave great weight to two physical examinations in 2011 (Dr. Ranganathan) and 2012 (Dr. Hamilton) who both found normal strength with minimal limitation in cervical flexion and no neurological or musculoskeletal abnormalities. R. 24-25. Plaintiff's shoulder MRI from November 2010 showed only mild bursitis and no evidence of a rotator cuff tear. R. 430. By December 2010, her shoulder pain was "much improved" with "very slight intermittent pain" with "excessive use." R. 341. The ALJ offered specific reasons for

discrediting Plaintiff's subjective complaints.  The ALJ's reasons included inconsistencies between her reports and the examination findings, as well as inconsistencies between her statements and her activities of daily living.  These are factors the ALJ is directed to consider.  20 C.F.R. §§ 404.1529; 416.929.  Moreover, Plaintiff reported to the SSA in early 2011 that she had been enrolled in school to obtain a license to sell life and health insurance, which she finished, but the State of Florida would not let her sit for the test; she also reported going to school for insurance licensing, but being unable to continue due to her legal history.  R. 203, 374.  The ALJ's reasons are supported by substantial evidence in the Record.

## IV.  CONCLUSION

The ALJ appropriately considered Plaintiff's circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 15, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record